# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DR. JOYCE BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:10-0736 |
| | ) Judge Sharp |
| MICHAEL HALE, JOHN DOE # 1 and | ) |
| JOHN DOE # 2, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

In this civil rights action brought by Dr. Joyce Brown ("Dr. Brown"), Defendant Michael Hale ("Hale") has filed a Motion to Dismiss (Docket No. 24). In accordance with Judge Trauger's Order (Docket No. 32) entered before the case was reassigned to the undersigned, that motion will be considered as a Motion for Summary Judgment, and, as such, will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual allegations in Plaintiff's Verified Complaint are relatively sparse, and are as follows:

      8. On August 6, 2009, Defendant Michael Hale and other DEA agents raided the office of Plaintiff. Plaintiff proceeded to unlock the door to her medical clinic on that evening at the request of Michael Hale. While unlocking the door to her medical clinic, Michael Hale grabbed Plaintiff's arm forcefully and threw her aside with sufficient force to break Plaintiff's keychain.

      9. During this raid, Defendants seized multiple medical records of Plaintiff's patients. Without those records, Plaintiff's care for those patients have suffered.

      10. On December 3, 2009, while at Nashville International Airport, Defendant Michael Hale followed Plaintiff throughout the airport. When Plaintiff stopped and confronted Michael Hale at the airport, he refused to identify himself. When Plaintiff announced that she believed him to be Michael Hale, the Defendant

ordered Plaintiff to stop talking and threatened to arrest her.

      11. Since the August, 2009 raid of Plaintiff's medical clinic, Defendants have threatened to prosecute Plaintiff and have questioned, without basis or need, Plaintiff's family members.

      12. Since the August, 2009 raid of Plaintiff's medical clinic, Defendants have contacted local pharmacies in and around Plaintiff's medical clinic and discouraged those pharmacies from filling the prescriptions of Plaintiff's patients.

      13. Multiple patients of Plaintiff have reported to her that local pharmacies have denied care to the patients and that the local pharmacies justified the denial of care on the basis that Plaintiff was being investigated by the DEA.

      14. Plaintiff has lost patients as a result of those patients being denied care at local pharmacies.

      15. Defendants have, without good cause or justification, sent undercover officers and/or informants into Plaintiff's medical clinic seeking narcotic drugs. These actions by Defendant have distracted Plaintiff from the care of her real patients with serious medical conditions.

(Docket No. 1, Verified Complaint ¶¶ 8-15).

Based upon the foregoing allegations, Plaintiff filed suit in this Court against Hale and two "John Doe" Defendants[1] under 42 U.S.C. § 1983, asserting that their actions violated her rights under the Fourth and Fifth Amendments to the United States Constitution. She also claims that Defendants' actions constituted "malicious prosecution," "malicious abuse of process," "intentional infliction of emotional distress," "tortious interference with business relationships," and "civil conspiracy."

In support of his Motion to Dismiss, Hale submitted an Affidavit in which he sets forth his take on the events that led to the filing of this litigation. He also filed a "Certification," which states

---

[1] Although this case was filed on August 8, 2010, Plaintiff has yet to identify the "John Doe" Defendants, and it is unclear whether those proposed Defendants are state and/or federal actors. As such, the Court is not in a position to determine whether Plaintiff has stated any viable claims against the John Doe Defendants, and those Defendants will be dismissed without prejudice.

2

that, during all relevant times, he was acting within the scope of his federal employment.

In his Affidavit, Hale indicates that, in the summer of 2009, while working in the Enforcement Group of the DEA, he learned of an investigation into the prescribing practices of Dr. Brown. On the morning of August 6, 2009, he met with eight other agents and officers (some from the DEA and some from the Smyrna Police Department) in order to execute a search warrant – issued by a United States Magistrate Judge – on Dr. Brown's medical office. When they arrived, officers found the door locked, and Hale sent two of the officers to her home to see if she would be willing to return to her office and unlock the door. Approximately 30 minutes later, Hale was informed that Dr. Brown was on her way to the office. (Docket No. 26 ¶ 5).

According to Hale, when Dr. Brown arrived some 15 minutes thereafter, he explained that he had a search warrant and that she needed to unlock the door. Dr. Brown, who Hale claims was "very belligerent and hostile," refused, began asking questions, and demanded to see the search warrant. After several exchanges between the two, Hale told Dr. Brown that if she did not unlock the door he would use an entry ram to force open the door. (Id. ¶ 6).

After Hale picked up a battering ram, Dr. Brown agreed to unlock the door and placed a key in the door. At this point, Hale claims, Dr. Brown again began to stall and started asking more questions, whereupon Hale "reached over and turned the key that was in the door," inadvertently touching her hand. (Id. ¶ 7). Hale specifically denies grabbing Dr. Brown's arm, or throwing her aside.

With regard to the airport incident, Hale claims that, sometime in December 2009, he and his wife were at the Nashville International Airport at around 4:30 a.m., waiting for a flight. As his wife slept at the departure gate, Hale wandered down the concourse and was confronted by Plaintiff

3

who, "in a very hostile manner," asked him his name. (Id. ¶ 10). Hale started to walk away, and Dr. Brown followed him and said, "I know who you are, you're Mike Hale and you work for the DEA." (Id.). Hale claims that he then confirmed his identity, told Dr. Brown that she was not to come around his family or him again, and that, if she did, he would have her arrested. Hale then returned to the gate and saw Dr. Brown take a seat across the concourse walkway. Dr. Brown appeared to be taking notes for "awhile," and then "got up and left." (Id.).

After receiving the Motion to Dismiss, Plaintiff filed a request for additional time to respond because Hale had filed matters outside the pleadings in support of his motion, including his Affidavit. In doing so, Plaintiff cited Rule 12(d) of the Federal Rules of Civil Procedure, and asserted that "she must now obtain and prepare affidavit(s) and prepare additional research to respond" (Docket No. 31 at 2) to Hale's Motion. In granting the request for an extension of time, Judge Trauger specifically stated that "[t]he court will treat the defendants' Motion to Dismiss as a Motion for Summary Judgment[.]" (Docket No. 32 at 1). Despite being notified that the Court would convert the motion, and despite being granted yet another extension of time, Plaintiff's response does not contain any material outside of the pleadings, not even an affidavit to counter Hale's version of events.

## II. STANDARD OF REVIEW

The standards governing motions for summary judgment are well-known. A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty

4

Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The nonmoving party then bears the burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

### III.  APPLICATION OF LAW

Hale seeks dismissal of all of Dr. Brown's claims against him. He argues: (1) the claims against him in his official capacity must be dismissed because such claims are actually against the United States, which has not waived its sovereign immunity; (2) the claims brought under 42 U.S.C. § 1983 must be dismissed because the statute requires "state action,"; (3) the tort claims must be dismissed because he was acting in the scope of his federal employment and the sole remedy available to Dr. Brown is an action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*; and, (4) to the extent that the Complaint can be construed to allege an action pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), the same must be dismissed on qualified immunity grounds.

In response, Dr. Brown concedes that two of Hale's arguments are "well taken." (Docket No. 37 at 1). Specifically, she "concedes that claims against Defendant Hale in his *official* capacity only should be dismissed on sovereign immunity grounds," and "also concedes that a 42 U.S.C. § 1983 action may not be proper in this lawsuit." (Id., italics in original). These concessions leave

5

for consideration the viability of a claim under the FTCA and/or Bivens.

Prior to reaching those claims, the Court notes that, throughout her response, Dr. Brown refers to Rule 12(b)(6) as providing the applicable standard of review. Among other things, she asserts that "**these motions are not favored and are rarely granted** in light of the pleading standards," insists that she "must overcome only a very low threshold," and states that she "need only allege plausible facts that support the cause of action[.]" (Docket No. 37-1 at 2, bold in original). She also argues "the Court should not consider the Affidavit of Michael Hale in rendering a decision on this Motion to Dismiss because the statements made in his affidavit are outside the pleadings and introduce facts that, while perhaps may be considered for the purposes of a summary judgment motion, should not be considered in a Rule 12(b)(6) motion." (Id. at 3).

Such arguments ignore Judge Trauger's ruling that Hale's Motion to Dismiss would be treated as a Motion for Summary Judgment, "pursuant to Rule 12(d), Fed. R. Civ. P." (Docket No. 32 at 1) which provides:

> **(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). This ruling was prompted by Dr. Brown's request for extra time to respond specifically because Hale had submitted an affidavit which she needed to rebut.

The Court recognizes that at the time Plaintiff filed her response, discovery in this case was stayed because Hale had raised a qualified immunity defense, and one of the purposes of such a defense "is to protect public officials from the 'broad-ranging discovery' that can be 'particularly disruptive of effective government.'" Anderson v. Creighton, 483 U.S. 635, 646 (1987) (quoting

Harlow v. Fitzgerald, 457 U.S. 800, 817 (1982)).  Nevertheless, if Dr. Brown believed that discovery was necessary to oppose Hale's motion, she "should have filed a Fed. R. Civ. P. 56(f)[2] affidavit explaining [her] need for additional discovery." Summers v. Leis, 368 F.3d 881, 887 (6th Cir 2004); see also, Harris v. Caruso, 2012 WL 661952 at *5 (6th Cir. Feb. 29, 2012) (stating in the context of a qualified immunity defense, "[w]hen a motion for summary judgment is filed, the party opposing the motion may explain why he is entitled to additional discovery"); Westerfield v. United States, 366 Fed. Appx. 614, 621 (6th Cir. 2010) ("the district court may fashion a discovery order that is limited to the issue of qualified immunity").  At a minimum, Dr. Brown should have filed her own Affidavit if she believed some of the statements made by Hale were untrue.

As the record now stands, the Court has before it Dr. Brown's Verified Complaint, and Hale's Affidavit. "A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment," and, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion." Roberson v. Hayti Police Dept., 241 F.3d 992, 994-95 (8th Cir. 2001); see , Joplin v. Baylor, 1993 WL 288299 at *5 (6th Cir. 1993) ("this court accepts a verified complaint, to the extent that it is based on personal knowledge, as an opposing affidavit within the meaning of Fed.R.Civ.P. 56(e)"). Nevertheless, it is incumbent upon Dr. Brown, as the non-movant, to "show sufficient evidence to create a genuine issue of material fact." Perez v. Oakland County, 466 F.3d 412, 423 (6th Cir. 2006).

**A. Claims Under the FTCA**

---

[2] With the changes to the Federal Rules of Civil Procedure in 2010, Fed. R. Civ. P. 56(f) became Fed. R. Civ. P. 56(d).

7

The FTCA, as amended by the Federal Employee Liability Reform and Tort Compensation Act ("FELRTCA"), immunizes a federal employee from liability for "negligent or wrongful act[s] or omission[s] ... while acting within the scope of his office or employment." 28 U.S.C. § 2679. When a federal employee is sued in tort, it falls on the "[t]he United States Attorney for the district where the civil action or proceeding is brought, or any Director of the Torts Branch, Civil Division, Department of Justice" to certify whether the employee was acting within the scope of his or her employment at the time of the events giving rise to the claim. 28 U.S.C. § 2679(d)(1). "[I]f the certification is well taken, that is, if the defendant federal employee was acting in the scope of his or her employment, substitution of the United States as defendant is appropriate and the district court must assess the plaintiff's claims pursuant to the Federal Tort Claims Act (FTCA)." Dolan v. United States, 514 F.3d 587, 592 (6th Cir. 2008).

"[U]nder the FTCA, a plaintiff must exhaust administrative remedies," and "this exhaustion requirement is jurisdictional." Bumgardner v. United States, 2012 WL 858647 at *2 (6th Cir. Mar. 14, 2012). "[I]f the administrative requirements of the FTCA have not been fulfilled, the case must be dismissed for lack of jurisdiction." Dolan, 514 F.3d at 592.

In this case, the United States Attorney for the Middle District of Tennessee has certified that Hale "was acting within the scope of his employment as an employee of the United States at the time of the incidents alleged in plaintiff's complaint." (Docket No. 27 at 1). Based upon that certification, and because Dr. Brown has not pursued any administrative remedies, Hale argues that her claims under the FTCA must be dismissed.

In response, Dr. Brown does not challenge the certification, nor does she claim that she has exhausted administrative remedies. Rather, she argues that, because she concedes the claims against

8

Hale in his official capacity are subject to dismissal, the FTCA and its procedural requirements do not serve as a bar to bringing her state tort claims.[3]

As support, Dr. Brown quotes 28 U.S.C. § 2671 which defines "employee of the government" as including "persons acting on behalf of a federal agency in an official capacity[.]" However, Dr. Brown is mistaken insofar as she believes she can forward a state tort claim against a federal employee on official business simply by couching that claim as being against the employee in his individual capacity.

The FTCA makes clear that the remedy "for injury or loss of property, or personal injury or death arising from the negligent or wrongful act or omission of an employee of the Government *while acting within the scope of his office or employment* is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim," and "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded[.]" 28 U.S.C. § 2679(b)(1) (italics added).[4] That is, "[t]he FTCA provides the exclusive remedy for tort actions against the federal government, its agencies, and employees." Ellerbe v. United States, 2011 WL 4361616 at *4 (N.D. Ohio April 21, 2011); see also, Ortega v.

---

[3] Dr. Brown also makes the curious argument that, because "Defendants have not fulfilled the requirements of 28 U.S.C. § 2679," and "the United States has not yet been substituted as the Defendant in this case . . . the FTCA should not apply to resolution of this Motion." (Docket No. 37-1 at 4-5). However, the statute upon which Dr. Brown relies specifically provides that when a federal employee is acting pursuant to his duties and is sued for a "negligent or wrongful act," the Attorney General is required to defend the action and, upon his certification, "any civil action or proceeding commenced upon such a claim in a United States district court shall be deemed against the United States under the provision of this title." 28 U.S.C. §§ 2679 (c) & (d)(1).

[4] There are two exceptions to this exclusiveness of remedies: the FTCA "does not extend or apply to a civil action against an employee of the Government – (A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2).

9

ATF Officer Badge No. 4706, 2011 WL 6955715 at *3 n.2 (N.D. Tex. Dec. 8, 2011) ("individual defendants cannot be sued under the FTCA in their individual capacity"); Plunkett v. United States, 2001 WL 34085616 at *7 (D.S.C. March 23, 2001) (purported FTCA claims against defendants in their individual capacity are subject to dismissal). Accordingly, Dr. Brown's state law tort claims against Hale will be dismissed for lack of subject matter jurisdiction because she has failed to comply with the FTCA.

**B. Claims Under Bivens**

A Bivens claim "is a claim for money for injuries sustained as a result of a federal agent's violation of the constitution while acting under his federal authority." Dolan, 514 F.3d at 594 n.2. Hale argues he is entitled to qualified immunity on Dr. Brown's constitutional claims.

Qualified immunity is an affirmative defense which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court has held that, "[a]s with § 1983 actions against state and local officials, . . . a claimant seeking relief under Bivens must overcome the federal official's qualified immunity," and, "[t]o overcome that immunity, claimants must show (1) that the agents violated their constitutional rights and (2) that the constitutional right at issue is 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Baranki v. Fifteen Unknown Agents of the ATF, 452 F.3d 433, 438 (6th Cir. 2006) (quoting, Saucier v. Katz, 533 U.S. 194, 202 (2001)). A court is to use its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236

(2009).

Dr. Brown contends that resolution of the qualified immunity defense is premature at this juncture. She argues that "[a] qualified immunity defense is more appropriately argued in a motion for summary judgment because the argument requires a fact intensive analysis," and claims that "all Plaintiff need do to survive a motion to dismiss is allege a violation of a clearly established right." (Docket No. 37-1 at 5 & 7). Leaving aside that Judge Trauger converted the Motion to Dismiss to a Motion for Summary Judgment, this argument is unpersuasive because the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991). Indeed, "[t]he promise of an early exit from a lawsuit offered by qualified immunity is an empty promise if plaintiffs are routinely permitted to survive a motion to dismiss with mere 'notice pleading.'" Armengau v. Cline, 7 Fed. Appx. 336, 345 (6th Cir. 2001).

With respect to the merits of the defense, Dr. Brown argues she need do no more than simply allege the violation of a constitutional right, and her references to the Fourth and Fifth Amendments to the Constitution are more than sufficient. (Docket No. 37-1 at 7). This Court disagrees because, as the Sixth Circuit reiterated just this week,

> For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (quoting Saucier, 533 U.S. at 201). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." Ashcroft v. Al-Kidd, ––– U.S. ––––, ––––, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011) (citing Saucier, 533 U.S. at 201–02). Thus, "[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer

11

that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

> "We look first to the decisions of the Supreme Court, and then to the case law of this circuit in determining whether the right claimed was clearly established when the action complained of occurred." Gragg v. Ky. Cabinet for Workforce Dev., 289 F.3d 958, 964 (6th Cir. 2002) (citing Black v. Parke, 4 F.3d 442, 445 (6th Cir. 1993)). "[T]he case law must 'dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.'" Id. (quoting Saylor v. Bd. of Educ. of Harlan Cnty., 118 F.3d 507, 515 (6th Cir. 1997)). Plaintiffs bear the burden of showing the claimed right was clearly established. Everson v. Leis, 556 F.3d 484, 494 (6th Cir.2009).

Clemente v. Vaslo, ___ F.3d ___, ___, 2012 WL 1673921 at *5 (6th Cir. May 15, 2012).

Notwithstanding Dr. Brown's failure to articulate the alleged constitutional deprivation other than by claiming, in the most generalized way, that "persons have a clearly established right to be from unreasonable search and seizure and investigation," (Docket No. 37-1 at 6) the Court has considered the record and finds that Hale is entitled to qualified immunity on Dr. Brown's Fourth and Fifth Amendment claims.

For the most part, Dr. Brown makes allegations against the "Defendants" collectively. This is insufficient "[b]ecause a Bivens 'complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights,'" and, therefore, qualified immunity is appropriate where the complaint "'lacks any degree of specificity [as to] which of [the] named defendants were personally involved in or responsible for each of the alleged violations of [plaintiff's] constitutional rights[.]'" Merriweather v. Zamora, 569 F.3d 307, 319 (6th Cir. 2009) (citations omitted).

As for specific allegations against Hale, Dr. Brown complains about his involvement in the search of her office. She also complains about the encounter with him at the airport.

12

Insofar as Dr. Brown is complaining about Hale's presence on the property as a part of the overall "investigation" into her medical practice, the only evidence in the record is Hale's assertion that he was there pursuant to a warrant issued by a Magistrate Judge,[5] and there is no suggestion that the warrant was not based upon probable cause. However, "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335, 345-46 (1986); see, Ellison v. Balinski, 625 F.3d 953, 959 (6th Cir. 2010) (citation omitted) ("police generally are entitled to rely on a judicially secured warrant for immunity from liability for unconstitutional searches" unless warrant application plainly lacks probable cause).

To the extent Dr. Brown is claiming she was subjected to excessive force, it is clearly established that use of force that is not objectively reasonable violates the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 388 (1989). Nevertheless, even accepting as true Dr. Brown's statement in her Verified Complaint that her arm was "grabbed," and she was thrown aside, she does not claim that she suffered any harm or was physically injured, nor does she counter Hale's assertion that she was stalling and acting "very belligerent and hostile." (Docket No. 26 ¶ 5). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," id. at 396, and qualified immunity is meant "to protect officers from the sometimes 'hazy border between excessive and acceptable force.'" Saucier, 533 U.S. at 206; see, Morrison v. Board of Trustees of Green Twp., 583 F.3d 394, 407 (6th Cir. 2009) (collecting cases on qualified immunity in excessive force cases, and indicating that *de minimus* injury might suffice

---

[5] If untrue, this is something Dr. Brown could have placed into dispute (without conducting any discovery) simply by submitting an Affidavit because Hale claims that she was "served a copy of the warrant" and given a "receipt for all items that were taken" at the conclusion of the search. (Docket No. 26 ¶ 8).

to overcome the defense if a plaintiff shows that the officer engaged in "gratuitous violence").

Finally, Hale is entitled to qualified immunity on the claim based upon the airport incident, even accepting Dr. Brown's version of events. Dr. Brown only makes a bald claim that she was followed at the airport, ordered to stop talking, and threatened with arrest, yet she makes no effort to place that claim in context. "The burden lies on the plaintiff to refute a defense of qualified immunity once properly pleaded," Howell v. Sanders, 668 F.3d 344, 353 (6th Cir. 2012), including the "additional burden of pleading facts that, if taken as true, establish 'not only the violation of h[er] rights, but also that these rights were so clearly established when the acts were committed that any official in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to refrain from the conduct.'" Rippy v. Hattaway, 270 F.3d 416, 419-20 (6th Cir. 2001) (citation omitted). Dr. Brown has not done so in this case, and she has failed to do so even in light of Hale's assertion of the qualified immunity defense and his portrayal of the events at the airport.

## IV. **CONCLUSION**

On the basis of the foregoing, Hale's Motion to Dismiss, construed as a Motion for Summary Judgment, will be granted as follows: (1) claims covered by the FTCA will be dismissed for lack of subject matter jurisdiction; (2) the claims against Hale in his official and individual capacities with be dismissed with prejudice; and (3) the claims against John Doe # 1 and John Doe # 2 will be dismissed without prejudice.

An appropriate Order will be entered.

*Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE